**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

In re LUCY ANN GARRIOCK,

    Debtor.

BRANCH BANKING & TRUST CO.,

    Appellant,

v.                                         Civil Action No. 3:06cv559

W. CLARKSON McDOW, JR.,
U.S. TRUSTEE FOR REGION 4,

    Appellee.

**MEMORANDUM OPINION**

Appellant Branch Banking & Trust Co. ("BB&T") appeals the bankruptcy court's application of the federal judgment rate, as defined by 28 U.S.C. § 1961(a), to an award of post-petition interest pursuant to 11 U.S.C. § 726(a)(5). For the reasons set forth below, the judgment of the bankruptcy court is AFFIRMED.

**BACKGROUND**

On January 9, 2004, Lucy Ann Garriock filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. Garriock's case was later converted to a case under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701, et seq., and the United States appointed a Chapter 7 trustee to administer Garriock's estate. BB&T held four unsecured claims against the estate, totaling $122,515.91. It became clear during the course of the bankruptcy proceedings that Garriock's estate was

solvent, so the Chapter 7 trustee proposed to make post-petition interest payments, under 11 U.S.C. § 726(a)(5), to BB&T at the federal judgment rate set forth in 28 U.S.C. § 1961(a). BB&T objected to receiving interest at the federal judgment rate and argued that it should receive interest at the rate established by its pre-petition contract with Garriock. During a hearing on June 28, 2006, the bankruptcy court overruled BB&T's objection, and, on July 18, 2006, entered an order approving the use of the federal judgment rate. BB&T appeals the July 18, 2006 order. The sole issue on appeal is whether "the legal rate" of interest owed to claimants under 11 U.S.C. § 726(a)(5) refers only to the federal judgment rate or whether it encompasses pre-petition contracts between a claimant and the debtor.

## DISCUSSION

The Court has jurisdiction over this appeal under 28 U.S.C. § 158(a). The parties agree that this appeal involves a question of law which is reviewed de novo. In re Merry-Go-Round Enter., Inc., 400 F.3d 219, 224 (4th Cir. 2005).

As a general rule, unsecured creditors may not recover post-petition interest on their allowed claims. 11 U.S.C. § 502(b)(2) (2000). However, where an estate's assets exceed claims, as is the case here, a creditor is entitled to "interest at the legal rate from the date of the filing of the petition." 11 U.S.C. § 726(a)(5) (2000). The Bankruptcy Code does not define "the legal

rate," and the parties dispute its meaning. BB&T contends that "the legal rate" in this case is the pre-petition contract rate between BB&T and Garriock. The United States Trustee, on the other hand, contends that "the legal rate" refers in all cases to the statutory interest rate provided by 28 U.S.C. § 1961(a).

Courts have divided on this question. Some courts have applied a pre-petition contract rate in cases similar to this one. See, e.g., In re Fast, 318 B.R. 183 (Bankr. D. Colo. 2004); In re Carter, 220 B.R. 411 (Bankr. D. N.M. 1998); In re Schoeneberg, 156 B.R. 963 (Bankr. W.D. Tex. 1993); In re Beck, 128 B.R. 571 (Bankr. E.D. Okla. 1991). Other courts, and at least one leading commentator, have determined that "the legal rate" under 11 U.S.C. § 726(a)(5) is the federal judgment rate provided by 28 U.S.C. § 1961(a). See, e.g., In re Cardelucci, 285 F.3d 1231 (9th Cir. 2002); In re Country Manor of Kenton, Inc., 254 B.R. 179 (Bankr. N.D. Ohio 2000); In re Chiapetta, 159 B.R. 152 (Bankr. E.D. Pa. 1993); In re Melenyzer, 143 B.R. 829 (Bankr. W.D. Tex. 1992); In re Godsey, 134 B.R. 865 (Bankr. M.D. Tenn. 1991); 6 Collier on Bankruptcy ¶ 726.02[5] (15th ed. rev. 2006) ("The reference in the statute to the 'legal rate' suggests that Congress envisioned a single rate, probably the federal statutory rate for interest on judgments set by 28 U.S.C. § 1961."). Having reviewed each line of cases, the Court is persuaded that "the legal rate" refers to the federal judgment rate, and does not encompass, as BB&T contends,

any lawful pre-petition contract rate.

As the Ninth Circuit explains in In re Cardelucci, "principles of statutory interpretation lend strong support to the conclusion that Congress intended 'interest at the legal rate' in 11 U.S.C. § 726(a)(5) to mean interest at the federal statutory rate pursuant to 28 U.S.C. § 1961(a)." 285 F.3d at 1234. For example, in drafting § 726(a)(5), Congress inserted the phrase "interest at the legal rate" in place of the originally-proposed "interest on claims allowed." Id. (citations omitted). Although Congress apparently did not explain why it made that change, it is significant that Congress replaced general language with what the Ninth Circuit described as more "specific phrasing." Id. The narrow meaning of that "specific phrasing" is indicated by the use of the definite article "the" instead of the indefinite "a" or "an." Id. By awarding interest at "the legal rate," rather than at "a legal rate," Congress signaled that a single source should be used to calculate post-petition interest. Id. (citing United States v. Kanasco, Ltd., 123 F.3d 209, 211 (4th Cir. 1997); Black's Law Dictionary 1477 (6th ed. 1990)). Courts have properly determined that single source to be statutory because "the commonly understood meaning of 'at the legal rate' at the time the Bankruptcy Code was enacted was a rate fixed by statute."[1] Id. at 1234-35 (citing Inv.

---

[1] Moreover, had Congress intended, in § 726(a)(5), to refer to state law or to the language of pre-petition contracts, it certainly knew how to do so. See In re Godsey, 134 B.R. at 866.

Serv. Co. v. Allied Equities Corp., 519 F.2d 508, 511 (9th Cir. 1975); In re Dow Corning Corp., 237 B.R. 380, 402 (E.D. Mich. 1999)).

The proper statutory source for "the legal rate" is 28 U.S.C. § 1961(a), which establishes the federal judgment rate. Indeed, the award of post-petition interest is "analogous to an award of post-judgment interest." Id. at 1235; see also In re Chiapetta, 159 B.R. at 160-61; In re Melenyzer, 143 B.R. at 833. As the Ninth Circuit explains, "[a]s of the date of the filing of the petition, creditors hold a claim, similar to a federal judgment, against the estate, the payment of which is only dependent upon the completion of the bankruptcy process." In re Cardelucci, 285 F.3d at 1235. Because of delays inherent in completing the bankruptcy process, § 726(a)(5) awards post-petition interest to compensate creditors for the cost of those delays. In re Melenyzer, 143 B.R. at 833. The cost of delay affects all creditors equally, and the federal judgment rate accurately reflects the time value of each creditor's claims.[2] See In re Godsey, 134 B.R. at 867.

---

Indeed, other portions of the Bankruptcy Code explicitly instruct courts to consider state law or preexisting contract language. Id.

[2] Any pre-petition contract rates are irrelevant because "[i]nterest does not survive the debt from which it stemmed; if the debt was extinguished, so was any interest relating to it." 4 Collier on Bankruptcy ¶ 502.03[3][c] (15th ed. rev. 2007). Debt is "extinguished" on the petition date, so it is not surprising that § 726(a)(5) explicitly awards all creditors a common "interest at the legal rate from the date of the filing of the petition."

5

Courts which eschew this analysis and, instead, choose to apply a pre-petition contract rate, do so to avoid creating a windfall for a solvent debtor. See, e.g., In re Fast, 318 B.R. at 190; In re Carter, 220 B.R. at 416-17; In re Beck, 128 B.R. at 573. That motivation is understandable, particularly in light of a court's obligation, under Vanston Bankholders Protective Committee v. Green, 329 U.S. 156, 165 (1946), to consider the equities in each particular case. See In re Fast, 318 B.R. at 192; In re Beck, 128 B.R. at 573. However, Vanston was concerned not only with the equities "between creditors and debtors," but also with the equities "between creditor and creditor," and Congress' decision to award interest at a uniform "legal rate" quite clearly promotes the equal treatment of similarly situated creditors.[3] See In re Cardelucci, 285 F.3d at 1235. Even if the Court believed that Congress struck the wrong balance in this case, and did not adequately consider the potential creation of windfalls for solvent debtors, the Court is not at liberty to substitute its policy judgment for that of Congress. See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"). Nor, given the statutory

---

[3] It may also reflect other policy considerations, such as administrative efficiency and the conservation of judicial resources. See In re Cardelucci, 285 F.3d at 1236 (citing In re Baguelin, 220 B.R. 94, 101 (B.A.P. 9th Cir. 1998)).

interpretation analysis set forth above, is the Court free to interpret "the legal rate" in different ways depending on "the specific factual circumstances before the court." In re Cardelucci, 285 F.3d at 1236 (citing In re Thompson, 16 F.3d 576, 581 (4th Cir. 1994)). Thus, even though application of the federal judgment rate will, on the facts of this case, create a windfall for Garriock, that injustice, such as it is, must be remedied by Congress.

For the reasons set forth above, the Court holds that "the legal rate" in 11 U.S.C. § 726(a)(5) is the federal judgment rate established by 28 U.S.C. § 1961(a).

## CONCLUSION

Because the bankruptcy court properly determined "the legal rate" under 11 U.S.C. § 726(a)(5) to be the federal judgment rate established by 28 U.S.C. § 1961(a), the judgment of the bankruptcy court is AFFIRMED.

The Clerk of the Court is directed to send a copy of this Opinion to all counsel of record.

It is so ORDERED.

                                              /s/
                                       Robert E. Payne
                                       Senior United States District Judge

Richmond, Virginia
Date: August 16, 2007